UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13CV5

| | | |
|---|---|---|
| **DEBORAH LYNN CREEGAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

 

 

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary

Judgment (Doc. No. 10) and the Commissioner's Motion for Summary Judgment

(Doc. No. 12). Having carefully considered such motions and reviewed the

pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.     Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance

Benefits. Plaintiff's claim was denied both initially and on reconsideration;

thereafter, Plaintiff requested and was granted a hearing before an administrative law

judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was

unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council.

Plaintiff's request for review was denied and the ALJ's decision affirmed by the

1

Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  Thereafter, Plaintiff timely filed this action.

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra*.  Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  *Hays v. Sullivan, supra*.

## IV.    Substantial Evidence

### A.    Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     Whether the claimant is engaged in substantial gainful activity;

(2)     Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)     Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5)     Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v).

In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

## C.     The Administrative Decision

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since August 10, 2009, the alleged onset date (Tr. 21, Finding 2). At the second step, the ALJ concluded that Plaintiff suffered from the following medically determinable severe impairments: a back disorder status post two surgeries, right shoulder pain, anxiety, depression, and a history of alcohol dependence (Tr. 21, Finding 3). At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 22, Finding 4).

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and made the following finding:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that does not require more than frequent postural activities; no more than occasional stooping or overhead reaching with the right upper extremity; no climbing of ropes, ladders or scaffolds; no concentrated exposure to hazards[;] and she will require a sit/stand option. She is limited to unskilled work.

(Tr. 23, Finding 5).  In making this finding, the ALJ considered all symptoms and the extent to  which these symptoms could reasonably be accepted as consistent with the objective medical  evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-7p (Tr. 23).  After consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he further found that Plaintiff's statements regarding the degree of her symptoms were not credible (Tr. 25).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a groundskeeper, a landscape worker, or a house cleaner (Tr. 26, Finding 6). At the fifth step, however, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 26, Finding 10). Specifically, the ALJ identified representative occupations such as table worker, inspector, and packer (Tr. 27).

## D.    Discussion

### 1.    Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: (1) The ALJ did not properly evaluate her residual functional capacity, and (2) The ALJ failed to properly evaluate Plaintiff's credibility. Plaintiff's assignments of error will be discussed seriatim.

## 2.    First Assignment of Error

Plaintiff argues that her RFC was improperly evaluated in that the ALJ assigned improper weight to consultative examinations and to specialists. An administrative law judge is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, he or she must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, available at 1996 WL 374184, at *2. It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning. See 20 C.F.R. § 404.1512(c); see also, e.g., *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); *Plummer v. Astrue*, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing *Stormo*), *adopted*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

In the instant case, substantial evidence supports the ALJ's assessment of Plaintiff's RFC. More fully, state agency physician Ellen Huffman-Zechman, M.D., opined in November 2010 that Plaintiff could perform light work, subject

to the following limitations:  Plaintiff could only  frequently (*i.e.*, not constantly) climb, balance, kneel, crouch, or crawl; Plaintiff could only  frequently reach overhead with her right upper extremity; Plaintiff could only occasionally stoop; Plaintiff must avoid concentrated exposure to hazards such as machinery and heights; and  Plaintiff requires a sit/stand option (*i.e.*, she must periodically alternate sitting and standing) (Tr.  72-74, 77).  With respect to Plaintiff's mental limitations, Dr. Huffman-Zechman opined that Plaintiff could perform only unskilled work (Tr. 77; *see also* Tr. 75-76, 209, 261-62).  In March  2011, state agency physician Margaret Parrish, M.D., affirmed these opinions concerning Plaintiff's physical and mental limitations (Tr. 87-89, 91).  As the ALJ correctly states, his RFC finding essentially adopts the opinions of Drs. Huffman-Zechman and Parrish (Tr. 26).[1] The ALJ properly relied upon these opinions because state agency physicians such as  Drs. Huffman-Zechman and Parrish are "highly qualified . . . experts in the evaluation of the  medical issues in disability claims under the Social Security Act."  *See* 20 C.F.R.  §  404.1527(e)(2)(i); *see also* 20 C.F.R. § 404.1527(c)(6).  Further, these opinions are consistent  with and well supported by the record as a whole.  *See* 20 C.F.R. § 404.1527(c)(4).

---

1       As the ALJ correctly notes, portions of the assessed RFC are more restrictive than the opinions of the state agency physicians (Tr. 26).  For example, although the ALJ found in the RFC that Plaintiff could *never* climb ropes, ladders, or scaffolds (Tr. 23), the state agency physicians opined that Plaintiff could *frequently* perform such activities (Tr. 74, 88).  By definition, a person with the smaller set of restrictions opined by the state agency physicians could perform all jobs available to a person with the larger set of restrictions adopted by the ALJ and relied upon by the vocational expert.

With respect to Plaintiff's alleged back pain, the ALJ correctly emphasizes that consultative examiner Stephen Burgess, M.D., Ph.D., reported in November 2010 that Plaintiff ambulated without the use of a cane or any other handheld assistive device, that she had a normal stance, that she appeared stable at station, that she appeared comfortable when sitting, that she had only mild tenderness in the dorsolumbar spine, and that her straight leg raise test was normal bilaterally (Tr. 24, referring to Tr. 268, 270). In addition, the ALJ states that Dr. Burgess observed that Plaintiff "ambulates with a gait" (Tr. 24), which appears to refer to Dr. Burgess' report that Plaintiff ambulated with a gait that was not unsteady or unpredictable, although she did favor her left leg and had "a bit of a lurch" (Tr. 268). Dr. Burgess also reported that Plaintiff had "no tenderness" in her cervical spine, despite "some diffusely tender" muscles on her right side (Tr. 269).

The ALJ also correctly emphasizes other evidence indicating that Plaintiff's back impairment was relatively mild (Tr. 24). More fully, and as the ALJ correctly states, an MRI subsequent to Plaintiff's first back surgery in March 2006 (Tr. 49, 230) showed that her previous disc rupture was gone and that she had only mild degenerative disc disease with no residual or recurrent disc herniation (Tr. 24, referring to Tr. 236; *see also* Tr. 295). The ALJ further correctly states that, subsequent to Plaintiff's first back surgery, she was able to return to work in a capacity that required her to walk six miles per day (Tr. 24, referring to Tr. 227 &

230; *see also* Tr. 178-79, 187, 237). The ALJ also correctly notes that diagnostic testing subsequent to Plaintiff's second (and final) back surgery in September 2009 (Tr. 49) showed only relatively mild degenerative findings (Tr. 24, referring to Tr. 250-51, 252, 264, 272).

With respect to Plaintiff's alleged mental limitations, the ALJ correctly emphasizes that there is no indication in the record that Plaintiff ever required emergency treatment, inpatient hospitalization, or formal counseling or therapy (Tr. 25). The ALJ also correctly emphasizes that consultative examiner Grace Barnes, Psy.D., reported in October 2010 that there was no evidence of significant functional impairment due to behavioral or emotional dysfunction or dysregulation, affective symptomatology, or persistent and pervasive personality dysfunction (Tr. 25, referring to Tr. 260). As the ALJ correctly notes, Plaintiff admitted to Dr. Barnes that her alleged psychiatric symptoms did not cause any work problems (Tr. 25, referring to Tr. 256). As the ALJ further correctly states, Plaintiff admitted to Dr. Barnes that she did not have suicidal thoughts, she had not attempted to commit suicide, she did not feel hopeless, and she did not feel guilty (Tr. 25, referring to Tr. 257).

As the ALJ also correctly indicates, when Dr. Barnes inquired as to Plaintiff's depressive symptoms, she replied "I'm ok" (Tr. 25, referring to Tr. 257). More generally, Plaintiff admitted to Dr. Barnes that "most days" her mood

is "ok" (Tr. 259). In addition, Plaintiff admitted to Dr. Barnes that her antidepressant "makes things all right," describing its effect as "[l]ike someone turned the light on" (Tr. 254). As the Fourth Circuit explains, "[i]f a symptom can be reasonably controlled by . . . treatment, it is not disabling" *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *see* 20 C.F.R. § 404.1529(c)(3)(v). In addition, Dr. Barnes reported that, as assessed by a mental status examination and a clinical interview, Plaintiff's global cognitive functioning in the areas of attention, concentration, persistence, and memory were all within normal limits (Tr. 260). The ALJ also properly concluded that Plaintiff did not medically equal Listing 12.04C.

Plaintiff also contends that that the ALJ's decision appears to rely more on consultation reports while minimizing the records of treating physicians, such as her family physician, Dr. Ingram, and Carolina Spine and Neurosurgery Center, which was responsible for her surgeries and physical therapy. She suggests that some of the medical evidence "may have been minimized or misunderstood" (Pl's Mem. 5). As an example, Plaintiff asserts that the ALJ "questions the Plaintiff's decision to have a second surgery" (Pl's Mem. 5). Plaintiff does not support this assertion by citing any statements that the ALJ made, and the Court found no such statements. Plaintiff therefore has not sustained her burden of establishing that the ALJ raised any question concerning Plaintiff's second surgery, let alone sustained her burden

of establishing that any such question caused her to suffer any prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at **1 (4th Cir. Dec. 27, 2001) ("any error on the part of the ALJ was harmless" because Plaintiff "made no showing of prejudice").

Plaintiff also cites as an example a report by Dr. Burgess regarding Plaintiff's right shoulder pain. The ALJ correctly emphasizes that Dr. Burgess reported that, although Plaintiff had some tenderness around her clavicle and AC joint, there was no redness, warmth, swelling, or nodules (Tr. 24, referring to Tr. 269). As the ALJ further correctly notes, Dr. Burgess also reported that, despite Plaintiff's discomfort, she had a reasonable range of motion in her right arm (Tr. 24, referring to Tr. 270). In addition, the ALJ correctly observes that Plaintiff did not require any aggressive treatment for her alleged right shoulder pain (Tr. 24).

Plaintiff asserts that "it is at least arguably significant" that the ALJ "may" have mischaracterized the record by stating that "[t]here is no evidence to show that any treating or examining physician felt diagnostic testing of [Plaintiff's right] shoulder was warranted" (Pl's Mem. 6, citing Tr. 24). Plaintiff argues that this statement is "[c]ontrary to" Dr. Burgess' comment that an x-ray of Plaintiff's right shoulder "might be useful" (Pl's Mem. 5-6, citing Tr. 270). Viewed in context, it

is apparent that Dr. Burgess meant that such an x-ray "might" be useful to determine the *etiology* of Plaintiff's right shoulder pain (Tr. 270).  More fully, Dr. Burgess stated in the very next sentence that Plaintiff's symptoms could be related either to her spine or to her shoulder (*id*.).  Nothing in Dr. Burgess' report indicates that an x-ray might be useful to determine the extent of the limitations, if any, arising from Plaintiff's alleged shoulder impairment (*id*.).  Assuming for the sake of argument that there is a material discrepancy between the ALJ's statement concerning what "was warranted" and Dr. Burgess' comment concerning what "might be useful," it suffices to note that the ALJ accounted for Plaintiff's alleged right shoulder pain by limiting her to only occasional overhead reaching with her right upper extremity (Tr. 23; *see also* Tr. 24-25), and Plaintiff has not sustained her burden of establishing that this impairment caused any limitations beyond those that the ALJ included in his RFC finding (Pl's Mem. 5-6).  For these reasons, even if there were a material discrepancy between the ALJ's statement and Dr. Burgess' comment, Plaintiff could not sustain her burden of establishing that any such discrepancy caused her to suffer any prejudice.  *See Shinseki*, 556 U.S. at 409; *Camp*, 2001 WL 1658913, at **1.

Plaintiff also argues that the ALJ failed to properly consider Dr. Ingram's "opinion" (Pl's Mem. 7).  The ALJ did not, however, have before him any "opinion" from Dr. Ingram.  More fully, the governing regulation defines

"opinions" as statements that "reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . what [the claimant] can still do despite [her] impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 1527(a)(2). This definition plainly excludes Dr. Ingram's treatment notes, which consist largely of checkmarks on preprinted forms concerning routine physical examinations (*see, e.g.,* Tr. 282- 83). *See, e.g., Leovao v. Astrue*, No. 2:11-cv-00054, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012) (Mag. J. Mem. & Rec.) (document not an "opinion" within meaning of 20 C.F.R.§ 1527(a)(2) because "it did not directly address Plaintiff's ability to perform work-related activities"), *adopted*, 2012 WL 6186824 (W.D.N.C. Dec. 12, 2012); *Money v. Astrue*, No. 5:09- cv-00042, 2009 WL 7449241, at *7 (W.D.N.C. Dec. 9, 2009) (Mag. J. Mem. & Rec.) ("bare diagnoses and medical findings are not opinions" within meaning of 20 C.F.R. § 1527(a)(2)), *adopted*, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011).

Because Dr. Ingram's checklist treatment notes are not "opinions" within the meaning of 20 C.F.R. § 1527(a)(2), the ALJ was not obligated to address them. *See, e.g., Mitchell v. Astrue*, No. 2:11-cv-00056, 2013 WL 678068, at *5 (W.D.N.C. Feb. 25, 2013); *Leovao*, 2012 WL 6189326, at *5. Contrary to Plaintiff's assertion (Pl's Mem. 4) that the ALJ "does not mention" these checklist treatment notes, however, it is apparent that the ALJ did consider the facts

reflected therein when he assessed Plaintiff's RFC.  For example, Dr. Ingram's

checklist treatment notes record Plaintiff's complaints of pain and depression (*see,*

*e.g.*, Tr. 282).  At step two of the sequential evaluation process, the ALJ expressly

found that these impairments "significantly limit[ed]" Plaintiff's "ability to

perform basic work activities" (Tr. 20-21).  Similarly, in his discussion of

Plaintiff's RFC, the ALJ found that these impairments "could  reasonably be

expected to cause some limitations" (Tr. 25).  As discussed above, substantial

evidence supports the ALJ's consideration of the facts reflected in Dr. Ingram's

treatment notes,  and Plaintiff has not sustained her burden of establishing that she

had any limitations beyond  those that the ALJ included in his RFC finding.

Plaintiff also contends that the ALJ's consideration of Dr. Ingram's treatment

notes  violated 20 C.F.R. § 404.1527(c)(2) (Pl's Mem. 4).  As indicated by its title,

however, that  regulation is limited exclusively to "medical *opinions*" (emphasis

added).  Because Dr. Ingram's  treatment notes are not opinions, that regulation is

inapplicable.

Plaintiff argues that the ALJ improperly considered the absence of opinions

from specialists. Specifically, she argues that the ALJ "appears" to have "some sort

of bias" against treatment by  general practitioners as opposed to treatment by

specialists, and that he "seems" to have  penalized Plaintiff for visiting the former

but not the latter (Pl's Mem. 7-8).  Plaintiff, however, does not support her

argument by citing any statements that the ALJ made in his decision (Pl's Mem. 7-8). Instead, Plaintiff relies exclusively upon the fact that, at the hearing, the ALJ asked Plaintiff if she had seen any specialists concerning her alleged physical and/or mental impairments (Pl's Mem. 7-8, citing Tr. 52, 55). It appears that the ALJ made this inquiry in order to ensure that he complied with his duty to develop the record to include any records generated by specialists. *See, e.g., Kellihan v. Shalala*, No. 93-1976, 1994 WL 411615, at \*2 (4th Cir. Aug. 5, 1994); *see also* 20 C.F.R. § 404.1527(c)(5) (Agency "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). The ALJ's inquiry therefore was entirely proper. Accordingly, Plaintiff has not sustained her burden of establishing any error, let alone sustained her burden of establishing any prejudice arising from any such error. *See Shinseki*, 556 U.S. at 409; *Camp*, 2001 WL 1658913, at \*\*1.

### 3.    Second Assignment of Error

Plaintiff asserts that the ALJ did not properly evaluate her credibility. The Fourth Circuit outlines a two-step process for evaluating credibility in *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996), which mirrors the Commissioner's relevant rulings and regulations. See 20 C.F.R. § 404.1529; SSR 96-7p, available at 1996 WL 374186, at \*2. In conducting the two-step *Craig* analysis, step one requires an administrative law judge to determine whether there is "objective

medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. With regard to the first step, the ALJ states that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 25). This satisfies step one of *Craig*.

Step two requires that an administrative law judge next evaluate the alleged symptoms' intensity and persistence along with the extent to which those symptoms limit the claimant's ability to engage in work. *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. § 404.1529(c); SSR 96-7p, *available at* 1996 WL 374186, at *2. This evaluation requires an administrative law judge to consider (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) a claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p, *available at* 1996 WL 374186, at *2. Such other relevant evidence includes a claimant's activities of daily living; the location, duration, frequency, and intensity of her pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve her alleged pain and other symptoms. *Id*.

With regard to the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the assessed RFC (Tr. 25). Plaintiff argues that the ALJ's decision "does not show a proper evaluation of the Plaintiff's credibility" (Pl's Mem. 8). There was no error.

The ALJ correctly emphasizes that Plaintiff's "statements and admissions related to ongoing [daily] activities do not support [her] self-limiting allegations" (Tr. 25). More fully, and as the ALJ correctly states, Plaintiff admitted that she read, wrote poetry, painted, made wooden gifts for people, cleaned, otherwise maintained a residence, drove, shopped, prepared simple meals, did light yard work, watered flowers, visited with family members, and bathed and dressed herself (Tr. 25; see also Tr. 22, 24) (referring to Tr. 58, 59, 203, 204, 207, 210, 253, 258, 267). Plaintiff also admitted that she cared for her dog, drew, did laundry, was able to use a checkbook and manage funds, and watched television (Tr. 203, 204-06, 208, 258). The regulations allow this type of evidence to be considered in evaluating Plaintiff's credibility. See 20 CFR §§ 404.1529(c)(3) & 404.1529(c)(3)(i) (claimant's "daily activities" and "pattern of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, available at 1996 WL 374186, at *3, *5 & *7 ("daily activities" are material to assessment of claimant's

credibility). As the Fourth Circuit explains, an ALJ is entitled to discount the credibility of complaints by a claimant who is able to engage in the kinds of activities that Plaintiff in the instant case performed. See *Gross*, 785 F.2d at 1166 ("the pattern of [claimant's] daily activity" – including socializing, cooking, and generally taking care of a house – "suggests that he was not disabled from working"); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that claimant's routine activities – including visiting relatives, reading, watching television, cleaning the house, and doing laundry – were inconsistent with complaints of pain).

Plaintiff's lead argument against the ALJ's consideration of Plaintiff's activities of daily living appears to be that the ALJ did not properly account for Dr. Burgess' observation that Plaintiff's "left leg demonstrates reasonable strength but has a great deal of discomfort" (Pl's Mem. 9, referring to Tr. 270). As discussed above, the ALJ expressly considered the report in which Dr. Burgess indicated that Plaintiff did not use a cane or any other handheld assistive device and that Plaintiff ambulated with a gait that was not unsteady or unpredictable (*see, e.g.*, Tr. 24, referring to Tr. 268). Moreover, it is apparent that the ALJ properly relied upon Plaintiff's admissions concerning her daily activities as evidence of the functional capacity that she retained notwithstanding her discomfort and her other limitations. For these reasons, Plaintiff has not sustained

her burden of establishing – via Dr. Burgess' observation or any other evidence – that she suffered any limitations beyond those that the ALJ included in his RFC finding.

Plaintiff also argues that the ALJ improperly stated that Plaintiff's daily activities undermined the credibility of her allegation that her limitations were "totally *incapacitating*," which is a stricter standard than "totally *disabling*" as that term of art is defined in the Act (Pl's Mem. 9  [emphasis added], citing Tr. 26). Although the ALJ could have expressed himself more clearly, it appears that the ALJ meant that Plaintiff's admissions concerning her daily activities undermined the credibility of her allegation that she was "disabled" within the  meaning of the Act.  Significantly, that is how the ALJ repeatedly framed the question before him throughout his decision.  More fully, the ALJ stated that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 10, 2009, through the date of this decision" (Tr. 27),  that "[t]he evidence fails to substantiate [Plaintiff's] allegations of total disability" (Tr. 25), that  "[t]he issue is whether [Plaintiff] is disabled" (Tr. 19), that Plaintiff "must establish disability" (*id*.),  and that "[n]o treating physician has indicated that [Plaintiff] is totally disabled due to pain" (Tr. 25).  In addition, the ALJ repeatedly referred to "disability" under the Act (Tr. 20, 21, 22 , 24, 26).  Accordingly, Plaintiff has not sustained her burden of establishing that the ALJ's poor choice of a single word in a single sentence of his

decision reflects an error that caused her to suffer any prejudice. *See Shinseki*, 556 U.S. at 409; *Camp*, 2001 WL 1658913, at **1.

Plaintiff further challenges the ALJ's credibility finding on the ground that it does not properly consider her allegation that she suffered from disabling pain (Pl's Mem. 8-9). The gravamen of Plaintiff's argument appears to be that the ALJ improperly failed to discuss every shred of evidence in the record concerning Plaintiff's pain (Pl's Mem. 9). As a matter of law, that argument is unavailing. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (although ALJ must consider all relevant evidence, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"); *Mitchell v. Astrue*, No. 2:11-cv-00056, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) ("The failure to discuss every specific piece of evidence 'does not establish that [the administrative law judge] failed to consider it.'"). The Court notes that "[p]ain is not disabling *per se*," *Gross,* 785 F.2d at 1166, because "'disability requires more than mere inability to work without pain.'" *Ferrante v. Bowen,* No. 88-3907, 1989 WL 14408, at **4 (4th Cir. Feb. 7, 1989). As discussed above, Plaintiff has not sustained her burden of establishing that her alleged pain was disabling, and substantial evidence supports the ALJ's finding to the contrary. *See, e.g., Gross*, 785 F.2d at 1166 ("'subjective evidence of pain cannot take precedence over objective medical

evidence or the lack thereof'").  It bears emphasis that (1) the record contains numerous treatment notes that Dr. Ingram generated in connection with visits subsequent to the alleged onset date and (2) Dr. Ingram reported *in literally every single one of these notes* that Plaintiff was in "no acute distress" (Tr. 275, 277, 279, 283, 306, 309).  These treatment notes – which include notes that Dr. Ingram generated in February 2011 – squarely contradict Plaintiff's allegation, in a report  that she submitted to the Agency in January 2011, that "I HURT <u>ALL</u> OVER, ALL THE TIME – ALL THE TIME!!"  Tr. 202 (capitalization and emphasis in original).

 Significantly, it is apparent that the ALJ included various limitations in his RFC finding – including a sit/stand option – because he partially credited Plaintiff's allegations concerning her pain (Tr. 23).  At step two of the sequential evaluation process, the ALJ expressly found that Plaintiff's pain was a severe impairment that "significantly limit[ed]" her "ability to perform basic work activities" (Tr. 20-21).  Similarly, in his discussion of Plaintiff's RFC, the ALJ found that  Plaintiff's "pain . . . could reasonably be expected to cause some limitations" (Tr. 25).  More generally, the ALJ repeatedly referred to Plaintiff's pain and the limitations that it caused (Tr. 21  [multiple references], 22, 24 [multiple references], 25 [multiple references], 26).   For the reasons discussed above, Plaintiff has not sustained her burden of establishing that her pain caused

any limitations beyond those that the ALJ included in his RFC finding.

In a related argument, Plaintiff challenges the ALJ's credibility finding on the ground that he did not properly account for her allegation that she suffers from fibromyalgia (Pl's Mem. 11). "Pain is the main symptom of fibromyalgia." Nat'l Library of Med., http://www.ncbi.nlm.nih. gov/pubmedhealth/PMH0001463/ (last updated Feb. 2, 2012); *see also Stup v. Unum Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (listing "significant pain" as first symptom associated with fibromyalgia).[2] For the reasons discussed above, the ALJ properly considered Plaintiff's allegations of pain, and Plaintiff has not sustained her burden of establishing any limitations arising from pain beyond those that the ALJ included in his RFC finding. Three further points bear emphasis. First, it is far from clear that Plaintiff had fibromyalgia. As the Fourth Circuit explains, "[d]octors diagnose fibromyalgia based on tenderness of *at least eleven* of eighteen standard trigger points on the body"[3] and – as Plaintiff admits (Pl's Mem. 11) – the sole examination for fibromyalgia contained in the record indicated that Plaintiff had tenderness of *only four* of those trigger points (Tr. 275). Second, even if Plaintiff did have fibromyalgia, the Fourth Circuit has explained that most cases of

---

2    *Stup* was abrogated by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). This abrogation is immaterial because it had nothing to do with the Fourth Circuit's statements concerning fibromyalgia. *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630-31 (4th Cir. 2010).

3    *Stup*, 390 F.3d at 303 (emphasis added).

fibromyalgia are *not* so severe that they are totally disabling. *Stup*, 390 F.3d at 303. For the reasons discussed above, assuming for the sake of argument that Plaintiff had fibromyalgia, she could not sustain her burden of establishing that she had the rare version of that impairment that causes disability within the meaning of the Act. Third, although Plaintiff correctly notes (Pl's Mem. 11) that Dr. Ingram's records "show more than one entry of myalgias" – *i.e.*, muscle pains – Dr. Ingram's records also show more than one entry indicating that Plaintiff was *not* suffering from myalgias (Tr. 278, 282). Moreover, and as stated previously, Dr. Ingram reported in literally every single one of her treatment notes after the alleged onset date that Plaintiff was "in no acute distress" (Tr. 275, 277, 279, 283, 306, 309).

Finally, Plaintiff alleges that repeated references to alcohol in the ALJ decision indicate an improper attribution of the remote past history of alcohol use as a significant factor in the decision. It is apparent from the ALJ's decision, however, that he considered Plaintiff's history of alcohol abuse as an impairment that might *increase* her limitations and, therefore, make it *more likely that she was entitled to disability benefits*. More fully, the ALJ found at step two of the sequential evaluation process that Plaintiff's history of alcohol abuse was a severe impairment that "significantly limit[ed]" her "ability to perform basic work activities" (Tr. 20-21). In addition, the ALJ emphasizes in

his discussion of Plaintiff's RFC that she had a "history of alcohol dependence that could reasonably be expected to cause some limitations" (Tr. 25). In short, the ALJ *helped* Plaintiff by considering her history of alcohol abuse, and Plaintiff has not sustained her burden of establishing that this assistance somehow caused her to suffer any prejudice. *See Shinseki*, 556 U.S. at 409; *Camp*, 2001 WL 1658913, at **1.

Finally, the Court notes that it is the province of the ALJ, not the reviewing court, to make credibility determinations and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456. As the Fourth Circuit emphasizes, the ALJ has "the opportunity to observe the demeanor and to determine the credibility of the claimant." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court will uphold the ALJ's credibility finding.

## E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales*, *supra*; *Hays v. Sullivan*, *supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*, Plaintiff's Motion for Summary

Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1)   the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2)   the Plaintiff's Motion for Summary Judgment (Doc. No. 10) is **DENIED**;

(3)   the Commissioner's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**; and

(4)   this action is **DISMISSED**.

Signed: July 21, 2014

Graham C. Mullen
United States District Judge